Rodríguez Muñiz, Juez Ponente
*1011 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Bella International, Corp. (en adelante, “BIC’) mediante recurso de revisión administrativa presentado el 6 de noviembre de 2003. En el mismo, nos solicitó la revocación de la Resolución En Reconsideración emitida por el Departamento de Asuntos del Consumidor (en adelante, el D.A.C.O.) el 1ro de octubre de 2003, notificada el 7 de octubre de 2003. Mediante la referida resolución, el D.A.C.O. enmendó la Resolución emitida el 30 de junio de 2003, notificada en esa misma fecha.
A continuación expondremos el trasfondo fáctico y procesal del caso.
I
El 18 de junio de 2000, Dorcas Robles Walter (en adelante, Robles) adquirió de Patrick M. Kogut (en adelante, Kogut) un bote de propulsión (“jet boat”) usado, marca Bombardier, modelo Sportster, del año 1997, por la cantidad de siete mil dólares ($7,000.00). La recurrida pagó mil dólares ($1,000.00) en efectivo y la cantidad restante de seis mil dólares ($6,000.00) se financió mediante un préstamo que adquirió de una institución financiera. Véase “Oposición a Solicitud de Revisión Judicial de Resolución Administrativa”, a la página 3.
Surge del expediente que Kogut le había comprado el bote a BIC el 6 de junio de 2000. El precio de venta de la unidad fue de ocho mil quinientos dólares ($8,500.00). Por tratarse de la compra de un equipo usado a Kogut se le concedió una garantía del manufacturero por un término de dos (2) años a partir de la fecha de compraventa, por lo que ésta expiraba el 7 de junio de 2002.
El 23 de agosto de 2001, Robles acudió a las facilidades de BIC, debido a que el bote no desarrollaba la velocidad adecuadamente. Conforme al recibo número 223484, se reemplazaron los cuatro (4) puntos del motor. Alegadamente, BIC le indicó a Robles que la garantía del manufacturero no cubría las piezas que le fueron reemplazadas al bote. Así las cosas, Robles tuvo que pagar la cantidad de ciento ochenta y dos dólares con cincuenta y seis centavos ($182.56) por la reparación de la unidad. El bote permaneció en las facilidades de BIC aproximadamente cinco (5) días.
El 19 de noviembre de 2001, transcurridos veintisiete (27) días desde la reparación anterior, Robles llevó el bote a las facilidades de BIC, ya que la unidad continuaba presentando problemas al desarrollar la velocidad, es decir, no pasaba de las quince (15) millas por hora. En esta ocasión, BIC determinó que el bote tenía el “short block” (bloque del motor) dañado. Alegadamente, el 3 de diciembre de 2001, Alejandro Velásquez Pérez (en adelante, Velásquez), quien se desempeñaba como “Service Advisor” en BIC, le indicó a Robles que el costo estimado de reparar la unidad ascendía a la cantidad de tres mil cuatrocientos cuarenta y nueve dólares ($3,449.00). Por su parte, Robles alegó que la garantía del manufacturero aún estaba vigente. Así pues, el 20 de diciembre de 2001, BIC le envió un comunicado a Bombardier, manufacturero del bote, a los fines de verificar si la garantía cubría el reemplazo del “short block”. Por consiguiente, el bote permaneció en las facilidades de BIC hasta tanto se recibiera la autorización de Bombardier para repararlo.
En vista de lo anterior, el 9 de enero de 2002, Robles presentó una querella sobre incumplimiento de garantía ante el D.A.C.O. contra BIC. Alegó, en síntesis, que la garantía del bote aún estaba vigente, por lo que no tenía que pagar la cantidad de tres mil cuatrocientos cuarenta y nueve dólares ($3,449.00) por el reemplazo del “short block”. Solicitó que se le ordenara a BIC rescindir el contrato de compraventa del bote. Reclamó el reembolso de todo el dinero que había pagado por la unidad. Además, solicitó una indemnización por los daños y perjuicios sufridos.
Posteriormente, el 24 de enero de 2002, BIC recibió un aviso de Bombardier en el que se aprobaba el reemplazo del “short block” libre de costos. De la transcripción de-la vista administrativa celebrada por el D.A.C. O. el 7 de noviembre de 2002, surge que José Mendoza Feliciano, Representante de Servicios de BIC, declaró que *1012 la autorización se retrazó debido a que Bombardier recesó en sus operaciones para el mes de diciembre de 2001. Véase el Apéndice de la “Oposición a Solicitud de Revisión Judicial de Resolución Administrativa", a la página 72. Así las cosas, BIC procedió a reparar la unidad libre de costos. El bote le fue entregado a Robles el 4 de febrero de 2002, luego de haber permanecido en las facilidades de BIC por aproximadamente setenta y seis (76) días.
El 17 de abril de 2002, el D.A.C.O. celebró vista administrativa en el caso de epígrafe. De la Notificación de ese día, surge que las partes se habían reunido, previo a la vista, llegando a un acuerdo en cuanto a la reparación del bote. Por su parte, BIC se comprometió a recoger el bote en la residencia de Robles el 19 de abril de 2002, a la una de la tarde, para llevarlo a sus facilidades con el propósito de examinarlo y repararlo de acuerdo a las condiciones de la garantía. Alegadamente, el bote continuaba presentando un raido en el motor, a pesar de que se le había reemplazado el “short block”. Una vez reparado el bote, Robles tendría que probarlo e informarle por escrito al D.A.C.O. si el mismo había sido reparado a su satisfacción o si deseaba que el caso se adjudicara en una vista administrativa.
En cumplimiento de lo acordado por las partes, el 19 de abril de 2002, BIC recogió el bote en la residencia de Robles. Conforme al recibo número 225294, BIC reparó el “support fan, rivet-pop 3/16, terminal-femal, terminal-male” de la unidad. El costo de dicha reparación ascendió a treinta y cuatro dólares con sesenta centavos ($34.60). De acuerdo al expediente, BIC terminó de reparar el bote el 31 de mayo de 2002. Alegadamente, Velásquez llamó a Robles el 5 y 8 de junio de 2002, con el propósito de informarle que la unidad estaba reparada; sin embargo, no pudo comunicarse con ella. No fue hasta el 20 de junio de 2002, que alegadamente Velásquez pudo contactar a Robles, quien le indicó que pasaría en la semana a recoger el bote. En vista de que Robles no pasaba a recoger su bote, el 1 de julio de 2002, BIC le envió una carta en la que le solicitaba que se comunicara con el gerente de servicios para coordinar la entrega del equipo. El 10 de junio de 2002, Velásquez se comunicó una vez más con Robles para que hiciera los arreglos para recoger la unidad, pero ella le indicó que tenía problemas con su carro, por lo que no podía pasar por sus facilidades. 
No empece a lo anterior, el 27 de junio de 2002, Robles presentó Solicitud de Vista Administrativa ante el D. A.C.O. En la misma, alegó que BIC no había reparado la embarcación a su satisfacción. También alegó que BIC había mantenido el bote en sus facilidades hasta que expiró la garantía. A tenor con lo anterior, solicitó que se señalara una vista administrativa para que se adjudicara el caso.
Según surge del expediente, el 12 de agosto de 2002, Robles acudió a las facilidades de BIC a recoger el bote y pagó el costo de la reparación, es decir, la cantidad de treinta y cuatro dólares con sesenta centavos ($34.60).
También surge del expediente que para finales de octubre de 2002, el bote de Robles volvió a presentar el problema de falta de desarrollo de velocidad, por lo que a partir de esta fecha no pudo utilizarlo. 
Luego de varios incidentes procesales interlocutorios, el 7 de noviembre de 2002, el D.A.C.O. celebró vista administrativa en el caso de epígrafe.
El 30 de junio de 2003, notificada en esa misma fecha, el D.A.C.O. emitió Resolución. En la misma, expuso que de acuerdo a la prueba desfilada, Robles solicitó los servicios de reparación en garantía dentro del término de vigencia de la misma. Señaló que BIC no pudo reparar satisfactoriamente el bote, a pesar de haber tenido amplia oportunidad para ello, incumpliendo así con su obligación en cuanto a la garantía y con el compromiso de reparar la unidad realizada ante el D.A.C.O. el 17 de abril de 2002. Sostuvo que BIC no pudo demostrar ni estableció las razones por las cuales no quiso extender la garantía del bote al indicarle a Robles que la reparación tendría un costo de tres mil trescientos cuarenta y nueve dólares ($3,349.00). Añadió que no se había presentado prueba de cuáles piezas no estaban incluidas en la garantía del bote. Así pues, concluyó que la reparación en garantía realizada por BIC fue una negligente, ya que la prueba desfilada demostró que al día de la vista, el bote *1013 continuaba presentando problemas con el desarrollo de velocidad, razón por la cual Robles había llevado la unidad a reparar la primera ocasión. En virtud de lo anterior, ordenó a BIC que en el término de veinte (20) días, a partir de la notificación de la resolución, reparara satisfactoriamente y libre de costos el bote de Robles. Además, ordenó a BIC que le pagara a Robles la cantidad de mil ochocientos dólares ($1,800.00) por concepto de daños, o en la alternativa, si BIC incumpliera dentro del referido término, ésta pagaría a Robles dentro del término de diez (10) días a contar desde el vencimiento del plazo anterior, las cantidades de tres mil trescientos cuarenta y nueve dólares ($3,349.00) y mil ochocientos dólares ($1,800.00). Dichas cantidades devengarían intereses en caso de que BIC incumpliera con lo antes ordenado dentro de los términos concedidos.
Oportunamente, el 22 de julio de 2003, BIC presentó Moción de Reconsideración ante el D.A.C.O., la cual fue acogida por la agencia el 30 de julio de 2003.
El 1 de octubre de 2003, notificada el 7 de octubre de 2003, el D.A.C.O. emitió Resolución en Reconsideración. Mediante la misma, modificó la resolución original a los efectos de reducir la indemnización por concepto de daños que se le había otorgado a Robles a la cantidad de mil quinientos ocho dólares con cincuenta y seis centavos (1,508.56). Dicha cantidad se desglosaba en setecientos cincuenta dólares ($750.00) por concepto de honorarios de abogados y setecientos cincuenta y ocho dólares ($758.00) por concepto de mensualidades pagadas por el préstamo para adquirir el bote sin haber podido disfrutar el mismo.
II
Inconforme con la determinación del foro recurrido, la recurrente comparece ante nos y señala la comisión de los siguientes errores:

“Primer Error: Incidió el Honorable Departamento al no ajustarse la resolución, según enmendada en reconsideración, a la prueba presentada que forma parte del expediente administrativo en cuanto a un supuesto desperfecto ocurrido en octubre de 2002.

Segundo Error: Incidió el Honorable Departamento al imponer responsabilidad por un supuesto desperfecto ocurrido en octubre de 2002, luego de expirada la garantía del bote.

Tercer Error: Incidió el Honorable Departamento al permitir una enmienda de facto a la querella en contravención a su reglamento, sin dar oportunidad a la parte Peticionaria a inspeccionar ni verificar el estado del bote, lo que pone en un estado de indefensión a la Peticionaria y constituye una violación al debido proceso de ley que le cobija.

Cuarto Error: Incidió el Honorable Departamento en la imposición del término de 20 días contados desde la notificación de la resolución para reparar y del término de 10 días subsiguientes para pagar, al ser arbitrarios.

Quinto Error: Incidió el Honorable Departamento en la imposición en la alternativa de no efectuarse la reparación del bote, de la partida de $3,449.00 que corresponde a un estimado en ocasión de la reparación efectuada entre el 13 de noviembre de 2001 a 4 de febrero de 2002, por no ajustarse a la prueba presentada.

Sexto Error: Incidió el Honorable Departamento al ordenar el pago por daños por no relacionarse con el expediente administrativo ni la prueba desfdada y al ser arbitraria la determinación en cuanto a su procedencia. ”

Con el beneficio de la comparecencia del D.A.C.O., resolvemos.
*1014 Ill
Procederemos a discutir el primer y segundo error por estar intrínsecamente relacionados los discutiremos en conjunto.
Mediante el primer señalamiento de error, BIC alegó que el DACO incidió al no ajustarse la resolución, según enmendada en reconsideración, a la prueba presentada que forma parte del expediente administrativo en cuanto a un supuesto desperfecto ocurrido en octubre de 2002. En cuanto al segundo error, BIC planteó que el D.A.C.O. incidió al imponer responsabilidad por el desperfecto ocurrido en octubre de 2002, luego de expirada la garantía.
Como es sabido, los tribunales apelativos deben ser cautelosos al intervenir con las determinaciones administrativas de los foros especializados porque las conclusiones y determinaciones de los organismos administrativos merecen gran consideración y respeto por los tribunales en la etapa de revisión judicial. Rivera Concepción v. A.R.P.E., 152 D.P.R. _, 2000 J.T.S. 155, a la página 160, Opinión de 29 de septiembre de 2000; Associates Insurance Agencies Inc. v. Comisionado de Seguros, 144 D.P.R. 425, 436 (1997); Misión Industrial v. Junta de Planificación, 145 D.P.R. 908, 929-930 (1998).
La revisión judicial sólo determina si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que abusó de su discreción. Municipio de San Juan v. Junta de Calidad Ambiental, 149 D.P.R. 263, 280 (1999); T-JAC, Inc. v. Caguas Centrum Limited Partnership, S.E., 148 D.P.R. 70, 80-81 (1999); Comité de Vecinos Pro-Mejoramiento Inc. v. Junta de Planificación, 147 D.P.R. 750, 761 (1998); Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993).
En su escrito, BIC expuso, en síntesis, que la evidencia presentada en la vista administrativa no sostiene el hecho de que en el mes de octubre de 2002, el bote de Robles volvió a presentar problemas en cuanto al desarrollo de velocidad. En apoyo de su posición, argumentó que el testimonio de Robles se había enfocado en lo ocurrido durante la vigencia de la garantía. Añadió que la evidencia presentada en la vista establecía que el bote había sido reparado bajo los términos de la garantía. Señaló que a los fines de que quedara establecido que la embarcación había sufrido un desperfecto en octubre de 2002, era necesario la presentación de prueba pericial por ser éste un asunto técnico. Así pues, argumentó que el testimonio de Robles no podía ser tomado como prueba técnica pericial. Además, argumentó que no se había realizado ninguna inspección técnica del alegado desperfecto. A tenor con lo anterior, sostuvo que de la prueba presentada surgía que había cumplido con su obligación de reparar el bote mientras la garantía estuvo vigente. Inclusive señaló que del testimonio de Robles surgía que ella utilizó el bote después del 12 de agosto de 2002, es decir, luego de haberle reemplazado el “short block”, sin tener percance alguno.
De la transcripción de la vista, surge que Robles declaró que mientras utilizaba el bote para finales de octubre de 2002, es decir, luego de que fuera reparado por BIC en agosto de 2002, el mismo continuaba presentando problemas en cuanto al desarrollo de la velocidad. Explicó que cuando el bote se aceleraba hasta el máximo, se apagaba. Añadió que el bote no desarrollaba más de cinco (5) millas por hora.
Sabido es que, al apreciar la pmeba ante su consideración, los tribunales apelativos no habrán de pasar juicio sobre la credibilidad de los testimonios ofrecidos ante el foro de instancia, o ante el foro administrativo, y sustituirlo por el criterio propio. Ello es así, porque es ante el foro de instancia que declararon los testigos y quien tiene la oportunidad de apreciar el comportamiento, evaluar la veracidad del testimonio y dirimir cualquier conflicto que surgiera en el proceso. Pueblo v. Dávila Delgado, 143 D.P.R. 157, 173 (1997).
Ciertamente, el testimonio de Robles le mereció entera credibilidad a la agencia, por lo que concluyó que en efecto en octubre de 2002, el bote presentó una vez más el defecto al desarrollar la velocidad.
De otra parte, BIC señaló en su escrito que el D.A.C.O. concluyó que ésta había tenido varias oportunidades *1015 para reparar satisfactoriamente el “mismo defecto”, es decir, el desarrollo de la velocidad del bote. Alegó que esta aseveración eran especulaciones del D.A.C.O., puesto que no existe evidencia en el expediente que la sustente. También alegó que la garantía del bote había expirado en junio de 2002, por lo que no era su responsabilidad reparar cualquier desperfecto que hubiese ocurrido con posterioridad a esa fecha, es decir, cuatro (4) meses después de vencida la garantía.
A tenor con la norma de deferencia, los tribunales no alteran las determinaciones de hechos de los organismos administrativos si del expediente administrativo surge evidencia sustancial que las sostenga. Municipio de San Juan v. Junta de Calidad Ambiental, 152 D.P.R. _, 2000 J.T.S. 193, a la página 474, Opinión de 14 de diciembre de 2000; Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 75 (2000); Domínguez v. Caguas Expressway Motors, 148 D.P.R. 387, 397 (1999).
El propósito de la regla de evidencia sustancial, aplicable a las determinaciones de hechos de las agencias administrativas, es “evitar la sustitución del organismo administrativo en materia especializada por el criterio del tribunal revisor”. Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R. 85, 94-95 (1997); López v. Junta de Planificación, 80 D.P.R. 646, 672-673 (1958). Según nuestro Tribunal Supremo ha definido anteriormente, la evidencia sustancial comoque “es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión”. Asoc. Vec. H. San Jorge v. U. Med. Corp., supra, a la páginá 75; Ramírez v. Departamento de Salud, 147 D.P.R. 901, 905 (1999).
Por consiguiente, para convencer al tribunal de que la evidencia utilizada por la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no pueda ser concluido que la determinación de la agencia fue razonable de acuerdo a la totalidad de la prueba que tuvo ante su consideración. Ramírez v. Departamento de Salud, supra, a la página 905. No obstante, el tribunal debe sostener la resolución de un conflicto probatorio por parte de la agencia, siempre que ésta haya sido apoyada en una base racional.
De los autos del caso,' surge que BIC reparó el bote en tres (3) ocasiones por el mismo defecto, o sea, porque no desarrollaba velocidad. Estas reparaciones se llevaron a cabo en agosto de 2001, enero de 2002 y abril de 2002. A base de esta evidencia, el D.A.C.O. concluyó que BIC no había podido reparar satisfactoriamente el bote de Robles.
De otra parte, de los autos del caso surge que BIC no demostró que las reparaciones efectuadas a la unidad hubiesen sido las adecuadas. Como cuestión de hecho, del expediente surge que al día de la vista administrativa, el 7 de noviembre de 2002, el bote continuaba presentando el mismo fallo al desarrollar velocidad. Siendo ello así, BIC era responsable de reparar el bote en cuanto a dicho defecto, ya que el mismo había surgido desde el 23 de agosto de 2001, estando vigente la garantía, es decir, antes del 7 de junio de 2002. Además, BIC no reparó adecuadamente el defecto en las tres (3) ocasiones que se llevó el bote a sus facilidades.
En virtud de lo anterior, forzoso es colegir que las determinaciones fácticas del D.A.C.O. tienen una base racional en la prueba, por lo que la agencia no cometió abuso de discreción alguno. Así pues, los señalamientos de BIC no son suficientes para derrotar la presunción de regularidad y corrección que acompaña las determinaciones administrativas. Concluimos que no se cometieron los errores alegados.
En cuanto al tercer señalamiento de error, BIC planteó, en síntesis, que el tomar como cierto lo declarado por Robles en cuanto a que en octubre de 2002 el bote volvió a presentar el fallo en el desarrollo de velocidad era una nueva alegación, o sea, una enmienda a la querella. Por lo que el D.A.C.O. incidió al permitir que se enmendara la querella y autorizar una nueva reclamación que no estaba sustentada en la prueba, lo cual constituyó una violación al debido proceso de ley. Añadió que en todo caso, el D.A.C.O. debió referir esta *1016 nueva alegación para que fuera inspeccionado por su personal.
La Sección 3.1 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como “Ley de Procedimiento Administrativo Uniforme” (L.P.A.U.), 3 L.P.R.A. see. 2151, dispone, en lo pertinente, que en todo procedimiento adjudicativo formal se salvaguardará el derecho a ser notificado oportunamente de los cargos o querellas o reclamos en contra de una parte. Este derecho constituye una garantía básica del debido proceso de ley.
Las enmiendas en el juicio a una demanda están condicionadas a la consideración del momento en que se soliciten, su impacto en la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora e inacción original del promovente y el perjuicio que la misma causaría a la otra parté. Epifanio Vidal, Inc. v. Suro, 103 D.P.R. 793, 795-796 (1975). Para que no se admita la enmienda a las alegaciones por la pmeba, es necesario que el oponente demuestre que sufrirá algún perjuicio real. J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Publicaciones JTS, 2000, T. I, a la página 324. Sin duda alguna, el que no se le notifique oportunamente a una parte de la pretensión de la otra de cambiar sustancialmente las alegaciones, constituye un perjuicio significativo.
Del análisis de este expediente, no encontramos que se haya realizado alguna enmienda a la querella durante la vista. De la querella surge claramente que Robles alegó que BIC le pretendía cobrar la cantidad de tres mil cuatrocientos cuarenta y nueve dólares ($3,449.00) por el reemplazo del “short block,\ cuando la garantía del bote aún estaba vigente. Por el contrario, la declaración de Robles era evidencia de que BIC no reparó adecuadamente el bote, pues éste continuaba presentando el mismo defecto a pesar de que en tres (3) ocasiones fue llevado a sus facilidades para reparación.
En vista de lo anterior, resolvemos que no se cometió el error alegado.
BIC señaló como cuarto error que el D.A.C.O. erró al imponerle un término de veinte (20) días para reparar y de diez (10) días subsiguientes para pagar, al ser arbitrarios.
En el escrito, BIC planteó que la orden del D.A.C.O., en cuanto a que tenía que reparar el bote en un término de veinte (20) días, se impuso bajo el entendido de que el equipo estaba bajo su control, cuando la realidad era que el mismo estaba en posesión de Robles. Siendo ello así, BIC argumentó que estaba impedida de reparar el bote dentro del término de veinte (20) días establecido por el D.A.C.O. A tenor con lo anterior, señaló que era improcedente la imposición del término de diez (10) días, a contar desde el vencimiento del plazo anterior, para que le pagara a Robles las cantidades de tres mil trescientos cuarenta y nueve dólares ($3,349.00) y mil ochocientos dólares ($1,800.00). De acuerdo a BIC, el imponer los referidos términos era arbitrario, puesto que dejaba completamente al capricho de Robles la decisión de si llevaba o no, el bote al taller y cuándo lo llevaba.
Por su parte, el D.A.C.O. argumentó, en síntesis, que lo ordenado por dicho foro no le permitía a Robles escoger mediante qué método BIC cumpliría con su obligación de honrar la garantía del bote. Contrario a ello, argumentó que lo que se pretendía era que se lograra el cumplimiento de la obligación de hacer, la cual surgía del contrato de garantía y que BIC es la que tiene el equipo necesario para remolcar las unidades que requieren reparación y quien tiene que transportar el bote hasta su taller.
A tenor con lo anterior, resolvemos que el recurrente no ha expuesto, con relación a este señalamiento de error, circunstancias que denoten prejuicio o parcialidad por parte del D.A.C.O.
Mediante el quinto error, BIC alegó que el D.A.C.O. incidió en la imposición del pago de la cantidad de tres mil cuatrocientos cuarenta y nueve dólares ($3,349.00), en la alternativa de no efectuarse la reparación del bote, *1017 por no ajustarse a la prueba presentada.
En apoyo de su posición, BIC argumentó que no existía evidencia en el expediente que permitiera concluir que el costo actual de la reparación del bote ascendiera a esa cantidad, puesto que no se conocía el tipo de piezas y de reparación que requería el equipo en esta ocasión.
Mientras, D.A.C.O. expuso que la cuantía de tres mil cuatrocientos cuarenta y nueve dólares ($3,349.00) no fue determinada arbitrariamente, puesto que BIC había facturado la misma la segunda ocasión que intentó reparar el desperfecto en el desarrollo de la velocidad del bote. Por lo tanto, si BIC no podía reparar la unidad satisfactoriamente, en la alternativa, indemnizaría a Robles con la misma cantidad que le costaría reparar la unidad.
El D.A.C.O. tiene la facultad en ley de “atender e investigar las querellas presentadas” y “tomar la acción correctiva que proceda en derecho”. 23 L.P.R.A see. 1004(8). Además, el D.A.C.O. posee el poder para “[ijnterponer cualesquiera remedios legales que fueren necesarios para hacer efectivos los propósitos de este Capítulo y hacer que se cumplan las reglas, reglamentos, órdenes y determinaciones de la Administración”. 23 L.P.R.A. sec. 1005(b). Aunque es norma reiterada que “las decisiones y los criterios de los organismos administrativos especializados merecen gran consideración y respeto de nuestra parte, en vista de la vasta experiencia y conocimiento de dichos organismos, sin embargo, ello no significa que los tribunales renuncien a su función revisora en instancias apropiadas y meritorias. Entre los elementos a determinar por el tribunal, se encuentra establecer si el remedio concedido por la agencia fue el apropiado. ” Rivera Rentas v. A & C Development Corp., 144 D.P.R.450, 460-461 (1997).
En el presente caso, el D.A.C.O. no incidió al determinar que BIC debía indemnizar a Robles en caso de que no pudiera reparar satisfactoriamente el bote. Sin embargo, en cuanto a la concesión a Robles de la suma específica antes mencionada por concepto de indemnización, entendemos que la misma constituyó un remedio no apropiado.
Del expediente ante nos, no surge que se haya presentado prueba sobre qué tipo de reparación requería en esta ocasión el bote ni mucho menos cuáles serían los costos de la misma. En virtud de lo anterior, resolvemos que se cometió el error alegado por BIC. Por consiguiente, entendemos que lo que correspondía era imponerle a BIC la obligación de asumir cualquier costo que surgiera como consecuencia de que el bote tuviese que ser reparado por un tercero.
Como sexto error, BIC adujo que el D.A.C.O. incidió al otorgarle a favor de Robles una cuantía por daños, debido a que la misma no se relacionaba con el expediente administrativo ni con la prueba desfilada, por lo que la determinación en cuanto a su procedencia había sido arbitraria.
De la Resolución en Reconsideración surge que se redujo la indemnización por concepto de daños que se le. había otorgado a Robles a la cantidad de mil quinientos ocho dólares con cincuenta y seis centavos (1,508.56). La misma se desglosó en setecientos cincuenta dólares ($750.00) por concepto de honorarios de abogado y setecientos cincuenta y ocho dólares ($758.00) por concepto de mensualidades pagadas por el préstamo para adquirir el bote sin haber podido disfrutar el mismo.
Sobre el particular, BIC señaló que la cantidad impuesta por concepto de honorarios de abogado fue contraria a derecho, ya que D.A.C.O. no hizo conclusión de temeridad, BIC siempre descargó su obligación de reparar satisfactoriamente y no procedía la rescisión del contrato de compraventa según solicitado por Robles en la querella presentada.
La imposición de honorarios de abogado procede cuando una parte o su abogado haya actuado con *1018 temeridad o frivolidad. La temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. La temeridad es aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. Domínguez Vargas v. GA Life, 157 D.P.R. _, 2002 J.T.S. 110, a las páginas 21-22, Opinión de 12 de julio de 2002. La imposición de honorarios por temeridad descansa en la discreción del Tribunal. Blas Toledo v. Hospital, 146 D.P.R. 267, 334 (1998). Sin embargo, en aquellos casos en que los tribunales inferiores abusen de su discreción, los tribunales apelativos podrán revisar su actuación. Jarra Corporation v Axxis Corporation, 155 D.P.R. _; 2001 J.T.S. 167, a la página 491, Opinión de 30 de noviembre de 2001.
De los hechos del caso, surge que Robles presentó la querella, debido a que el 19 de noviembre de 2001, o sea, la segunda ocasión en que llevaba el bote a las facilidades de BIC para su reparación, se le indicó que la garantía no cubría el costo de reemplazar el “short block”, razón por la cual tenía que pagar tres mil cuatrocientos cuarenta y nueve dólares ($3,449.00). Sin embargo, de los hechos del caso surge que no fue hasta transcurridos aproximadamente treinta dos (32) días, el 20 de diciembre de 2001, que BIC se comunicó con el manufacturero del bote con el propósito de conseguir una autorización para reparar el bote conforme a la garantía. Por otro lado, conforme a los hechos del caso ante nuestra consideración, el 17 de abril de 2002, BIC se comprometió a recoger el bote con el propósito de examinarlo y repararlo de acuerdo a las condiciones de la garantía; no obstante, la unidad no fue reparada adecuadamente, puesto que continuaba presentando el mismo fallo. Esta situación provocó que Robles solicitara al D.A.C.O. la celebración de una vista administrativa prolongando así el trámite administrativo.
Conforme a lo anterior, entendemos que procedía la imposición de honorarios de abogado por las acciones de BIC al obligar a Robles a acudir ante el D.A.C.O. cuando la situación pudo haberse resuelto fuera del foro administrativo. La conclusión de temeridad no tiene que ser explícita en la sentencia, ya que cuando en ésta se imponen honorarios de abogado, se presume que la conclusión está implícita en la sentencia. Insurance Co. Of P.R. v. Tribunal Superior, 100 D.P.R. 405, 409-410 (1972).
Por último, BIC señaló en su escrito que no procedía imponerle el pago de una cantidad por concepto de los días que Robles no pudo disfrutar de su bote, puesto que en ese período de tiempo, la realidad es que la unidad estuvo en sus facilidades para ser reparado conforme a las especificaciones de la garantía.
De la transcripción de la vista, surge que Robles alegó que el bote estuvo en reparación un término aproximado de seis meses y medio a siete meses, por lo que no había podido utilizar satisfactoriamente la unidad durante el año y tres meses que tenía la embarcación de comprada. En vista de lo anterior, reclamó la cantidad de setecientos cincuenta y ocho dólares con cincuenta y seis centavos ($758.56) por concepto de las mensualidades pagadas por el préstamo para adquirir el bote sin haber podido disfrutar el mismo.
Del expediente surge que la primera ocasión en que se reparó el bote, el 23 de agosto de 2001, BIC retuvo el mismo en sus facilidades por un término de cinco (5) días. Mientras que en la segunda ocasión, el 19 de abril de 2002, el bote permaneció en los talleres de BIC por setenta y seis (76) días aproximadamente, ya que hubo un retraso en la autorización que se tuvo que adquirir del manufacturero para proceder con la reparación de la embarcación. De otra parte, en la tercera ocasión en que BIC reparó el bote, el 19 de abril de 2002, ésta se tardó en completar sus servicios aproximadamente cincuenta (50) días. Una vez reparado el bote, BIC hizo varias gestiones para contactar a Robles para que pasara a recogerlo; no obstante, ella no recogió la unidad hasta el 12 de agosto de 2002, es decir sesenta y cinco (65) días después de haber sido requerida para ello. Cabe señalar que de la transcripción surge que Robles pudo utilizar el bote hasta finales de octubre de 2002, cuando la unidad volvió a presentar el defecto en el desarrollo de la velocidad.
Conforme a lo anterior, surge que Robles estuvo privada de usar su bote por un término aproximado de ciento treinta (130) días, es decir, casi cuatro (4) meses. Así pues, concluimos que no erró D.A.C.O. al conceder *1019 daños por dicho concepto.
IV
Por los fundamentos antes expuestos, modificamos la resolución recurrida para que disponga que de no reparar satisfactoriamente el bote perteneciente a Robles, BIC pagará el costo de la reparación hecha por un tercero. Así modificada, confirmamos la misma en todos sus oíros extremos.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 41
1. Véase el Apéndice de la “Oposición a Solicitud de Revisión Judicial de Resolución Administrativa”, a la página 20.
2. Véase la transcripción de la vista administrativa celebrada por el D.A.C.O. el 7 de noviembre de 2002, incluida en el Apéndice de la “Oposición a Solicitud de Revisión Judicial de Resolución Administrativa”, a la página 79.
3. Id.
4. Véase el Apéndice de “Oposición a Solicitud de Revisión Judicial de Resolución Administrativa”, a la página 17.
5. Véase la trascripción de la vista administrativa celebrada por el D.A.C.O., Apéndice de la “Oposición a Solicitud de Revisión Judicial de Resolución Administrativa”, a la página 80.
6. Id., a la página 56.
7. BIC hace referencia a la determinación de hecho número 9 formulada por el DACO en la Resolución del 30 de junio de 2003; la misma establece lo siguiente;
“Afines de octubre de 2002, el bote volvió a presentar falta de desarrollo de velocidad, y desde esa fecha, el bote no ha podido ser utilizado. ” Véase el Apéndice del recurso, a la página 16.